**Margaret GLENN & Dennis Glenn, Appellants,**

v.

**ABRAMS/WILLIAMS BROTHERS, Bernis Lee Wood, & Conrad Managuil, Appellees.**

**No. A14–91–00682–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 13, 1992.

Rehearing Denied Sept. 24, 1992.

Alton C. Todd, W. Russ Jones, Alvin, for appellants.

Carol S. Bunter, Katherine D. Hunt, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a judgment in favor of appellees in a personal injury suit. Margaret and Dennis Glenn brought suit seeking $1,000,000.00 for mental anguish resulting from an automobile accident. As to Margaret Glenn's cause of action, the jury found past damages of $4,500.00, and

future damages of $10,000.00. The jury also found that appellees were ten percent negligent, and that appellants were ninety percent negligent. Accordingly, the trial court rendered judgment that appellants take nothing. We affirm.

On September 10, 1986, Margaret Glenn was attempting to drive through the intersection of Mignon Street and Beltway 8 in Houston, Texas. That intersection was under construction at the time and the construction crew was utilizing flagpersons to direct traffic during the day. In the months-long process of building a new frontage road, a temporary strip of dirt road about fifteen feet in width was constructed, resulting in the old paved and new non-paved sections to be at different elevations.

Mr. Glenn had crossed the graded area several times without incident and he crossed it on the day of the accident. According to his description, the gravel embankment was fairly flat on the morning of September 10, 1986. He testified there was a mound of dirt leveling out the two elevations and it was their only access in and out of the cul-de-sac on which their home was situated. Mrs. Glenn tried to leave her cul-de-sac that day and she thought she would not be able to drive from the unimproved area to the paved road. Cella Marie Catley was the flagperson on duty that day and she signalled for Mrs. Glenn to "come on down." Mrs. Glenn could not see how it was possible to cross because it appeared to her that there was a three to four foot "dirt wall" which would prevent her Cadillac from driving up onto the paved road. Mrs. Glenn waited and did not immediately follow the flag person's directions because she thought she would be led out of the construction area. Then, instead of proceeding through the intersection, she turned off the temporary section and followed a road grader into the construction area. After she had followed it for about sixty feet, the grader started to reverse its direction. Although the machinery "beeped" indicating that it was backing up, Mrs. Glenn did not sound her horn or put the car into reverse. She simply "froze" and was bumped by the grader. The driver of the machinery was not in position to see a vehicle directly behind him because of the blade on the grader. Also, he could not anticipate that a street vehicle would follow him into the construction area. The contact was minimal resulting in minor damage to the front right headlight and grillwork of the Cadillac.

In appellants' first three points of error, they contend that the trial court erred in allowing Cella Marie Catley to testify. Specifically, appellants complain that the witness had not been properly identified pursuant to TEX.R.CIV.P. 166b, that the trial court erred in finding good cause existed to allow her testimony, and that good cause was not shown in the record. On November 16, 1988, appellants served written interrogatories on appellees requesting the names, last known residential and business addresses and telephone numbers of all persons with knowledge of the facts concerning the accident. Appellees response listed Ms. Catley and other employees of appellee Abrams/Williams Brothers, and listed the company address and phone number.

On April 12, 1989, appellants requested the opportunity to depose several witnesses, including Ms. Catley, and on December 1, 1989, appellants served written notice of their intention to depose witnesses, again listing Ms. Catley's name. Ms. Catley's deposition was scheduled for January 30, 1990. On January 26, 1990, appellees sent appellants a letter informing them that three of the employees previously identified in interrogatories were no longer employed by J.D. Abrams and that their whereabouts were unknown. Ms. Catley was listed as one of these three people.

On the first day of trial, appellees informed appellants of their efforts to locate Ms. Catley and of their intention to call her to testify if she could be located. Ms. Catley was finally located by a private investigator on the evening of January 24, 1991, and she was called to testify the next day. The trial court held a hearing to determine whether good cause existed, overruled appellants' objection, and allowed

Ms. Catley to testify. Her testimony was very damaging to appellants' case because Ms. Catley testified that she had waved Mrs. Glenn straight forward. This was contrary to Mrs. Glenns' testimony that she was waved to follow the road grader. When Ms. Catley discovered Mrs. Glenn had not followed her directions, and was following the grader, she attempted to stop her.

■ The rules of civil procedure provide that a party has the duty to supplement responses which are no longer true within thirty days prior to trial unless good cause exists. TEX.R.CIV.P. 166b(6). Automatic exclusion of the testimony is the sanction for failure to supplement answers to interrogatories. TEX.R.CIV.P. 215(5); *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669, 671 (Tex.1990). The determination of whether good cause exists is within the sound discretion of the trial court and shall not be set aside absent the finding of abuse of discretion. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986). Thus, the reviewing court must determine whether the trial "court acted without reference to any guiding rules and principles." *Id.*

■ The evidence adduced at the hearing revealed: (1) Ms. Catley left her position in 1988; (2) defense counsel had not spoken to Ms. Catley until she was called to testify; (3) despite calls made over a period of eight months to Ms. Catley's relatives, requesting they contact Ms. Catley and have her call her former employer, Ms. Catley never returned defense counsel's phone calls; (4) the address given in defense counsel's interrogatories was Ms. Catley's last known address, and she thereafter left appellee's employ without giving a forwarding address or phone number; (5) Ms. Catley moved approximately five times after leaving Abrams/Williams Brothers; (6) Ms. Catley's telephone number remained unlisted up until the time of trial; (7) Ms. Catley admitted being told by relatives that her former employers were trying to locate her.

Unlike the facts in *Boothe v. Hausler,* 766 S.W.2d 788 (Tex.1989), in which the Texas Supreme Court has held that no good cause existed, defense counsel in this case disclosed Ms. Catley as a witness and supplied her *last known* address. Appellants were notified later that Ms. Catley had moved and her whereabouts were unknown. Appellees informed appellants that they intended to call Ms. Catley to testify if they could find her.

Appellants were aware Ms. Catley was a fact witness because she was originally a named defendant although she was not served in the lawsuit and was later nonsuited. Unlike the situation in *Morrow,* defense counsel supplemented Ms. Catley's address as soon as it was discovered. We find that good cause existed, was shown in the record, and we find that the court did not err in allowing Ms. Catley to testify. Appellants' first three points of error are overruled.

In their fourth point of error, appellants contend that the trial court erred by failing to excuse two venirepersons for cause, thus forcing appellants to exercise two peremptory strikes against them which resulted in their failure to strike two other objectionable venirepersons. Appellants assert that venirepersons number 3 and number 15 were biased or prejudiced with respect to appellants seeking mental anguish damages when there is no physical injury.

■ The Texas Government Code allows for the disqualification of a person to serve as juror if that person is prejudiced against or in favor of a party to the action. TEX.GOV'T CODE ANN. § 62.105(4) (Vernon 1988). If prejudice is established as a matter of law, the prospective juror is automatically disqualified. *Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex.1963). However, if prejudice is not established as a matter of law, the trial court makes a factual determination as to whether the venireperson is prejudiced enough to merit disqualification. *Swap Shop v. Fortune,* 365 S.W.2d 151, 154 (Tex.1963). This determination is within the discretion of the trial court and will not overturned absent a showing of abuse. *Sullemon v. U.S. Fidelity & Guar. Co.,* 734 S.W.2d 10, 14–15 (Tex.App.—Dallas 1987, no writ).

■ During voir dire, eight venirepersons were challenged for cause. The trial court conducted an examination and determined that six of the eight would be ex-

cused for cause. Venireperson number 3 stated that he was biased based on the lack of physical injury, and that he was prejudiced based upon the fact that Mrs. Glenn had not sought psychological care for a period of one year after the accident. He also stated that he would tend to be more critical than some of the other jurors, but that he was not saying that he couldn't be fair. He responded to questions by the court that he would be 100% objective and would follow the law. Through additional questioning by the court, the venireperson tried to explain his earlier statements and acknowledged that he would follow the standard set by law for determining this case.

Venireperson number 15 expressed reservations about awarding damages in mental anguish cases. She expressed her feelings to the court that she was having a "little bit of a problem with it." The court then conducted more extensive questioning and asked if she could take the oath if she were put in the jury box. She answered that she would not have a problem taking the oath, and that she would comply with it.

We cannot say as a matter of law that venirepersons 3 and 15 were so prejudiced as to require their automatic disqualification. Additionally, the court's in-depth questioning of the two venirepersons revealed that they would not only be impartial, but would take the oath and look only at the evidence in rendering a verdict. Both prospective jurors acknowledged that they would follow the law. The trial court was able to "size up" the venirepersons during its questioning to determine whether prejudice would affect their decisions. We find that the trial court did not abuse its discretion in failing to excuse the two venirepersons for cause. Point of error number four is overruled.

The judgment of the trial court is affirmed.

J. CURTISS BROWN, C.J., concurs in the result only without opinion.